**OXFORD ORPHANAGE, INC., et al., Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. C–82–972–G.**

United States District Court, M.D. North Carolina, Greensboro Division.

May 2, 1984.

Michael C. Stovall, Jr. of Johnston, Forsyth, Stovall & Hicks, Greensboro, N.C., and Leonard J. Henzke, Jr. and William J. Lehrfeld of Lehrfeld & Henzke, Washington, D.C., for plaintiffs.

Kenneth W. McAllister, U.S. Atty., M.D. N.C., Greensboro, N.C., and Robert L. Welsh, Tax Div., Civil Section, Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

HIRAM H. WARD, Chief Judge.

This matter came before the Court on Plaintiffs' Motion for Summary Judgment (January 24, 1984) and defendant's Cross-Motion for Summary Judgment (February 29, 1984). The Court received oral arguments on April 30, 1984. Currently pending before the Court is the defendant's motion to dismiss as parties without standing all plaintiffs except the executor of the estate of Howard S. Hunt, W. Eugene Johnston, III. Since the parties announced their intention to file the motions for summary judgment, the Court on June 29, 1983, directed the motion to dismiss to be consolidated with those motions. In this lawsuit plaintiffs sued to recover $59,-682.82 representing interest charges the IRS assessed and collected from the estate. Plaintiffs also seek attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d). The plaintiffs framed the tax issue as follows: "Whether the Internal Revenue Service erred in imposing an interest charge, where no estate tax liability was ever due or assessed and the Executor timely filed the return, so that there was never an 'underpayment' of tax within the meaning of the I.R.C. § 6601(a) statute authorizing interest charges." Defendant framed the same issue as follows:

Whether interest is properly assessed on an estate tax deficiency where the estate claimed on its return a charitable deduction for which the estate did not qualify at the time that the return was filed, but for which it later qualified because the will was properly reformed in accordance with [I.R.C. § 2055(e)(3)].

Section 2055(a), I.R.C., provides as a deduction from the value of the gross estate bequests to charities. However, the statute allows no deduction "where an interest in property ... passes ... from the decedent to a person, or for a use, described in subsection (a) [*i.e.*, charity], and an interest ... in the same property passes ... from the decedent to a person, or for a use, not described in subsection (a) ..." unless the remainder interest to the subsection (a) person or use is in the form of a charitable remainder annuity trust, charitable remainder unitrust, or pooled income fund, I.R.C. § 2055(e)(2)(A), or as otherwise provided in section 2055(e)(2)(B). Section 2055(e)(3), I.R.C., is a special provision granting the estate the opportunity to bring the bequest's provisions into compliance with section 2055(e)(2) and thereby gain the benefit of the charitable deduction. Section 2055(e)(3) provides in pertinent part as follows:

[I]n the case of a will executed before December 31, 1978, ... if a deduction is not allowable at the time of the decedent's death because of the failure of an interest in property which passes from the decedent to a person, or for a use, described in subsection (a) to meet the

requirements of [section 2055(e)(2)(A)], and if the governing instrument is amended or conformed on or before December 31, 1981 ... so that the interest is in a trust which meets the requirements of [section 2055(e)(2)(A)], a deduction shall nevertheless be allowed.

.   .   .   .   .

If the amendment or conformation of the governing instrument is made after the due date for the filing of the estate tax return ..., the deduction shall be allowed upon the filing of a timely claim for credit or refund (as provided in section 6511 [I.R.C.]) of an overpayment resulting from the application of this paragraph. In the case of a credit or refund as a result of an amendment or conformation made pursuant to this paragraph, no interest shall be allowed [against the government] for the period prior to the expiration of the 180th day after the date on which the claim for credit or refund is filed.

Section 2055(e)(3) also authorized the Secretary of the Treasury to promulgate regulations concerning the amendment or conformation of trust.

The procedure whereby one amends or conforms a will is a creature of state law. Section 36A–53(b), N.C.Gen.Stat., specifically authorizes the superior court to order the amendment of a trust created by a will in order to take advantage of the section 2055(a) deduction. Generally, the only requirements for obtaining the amendment are consent of the charitable beneficiaries or a finding that the interests of such beneficiaries are substantially preserved.

The parties have filed a Joint Stipulation of Facts (January 24, 1984) with exhibits. Howard S. Hunt, the decedent, died testate on October 5, 1977. By his will he directed that the residue of his estate should pass to a testamentary trust after payment of certain expenses. The trust provided for payment of income to certain individuals, two of whom predeceased the decedent, for life. At the termination of these income interests, the trust assets were to be equally divided between the Oxford Orphanage, Inc. and the Shriners Hospitals for Crippled Children, two charities eligible to receive tax deductible contributions for estate tax purposes. As originally drafted, however, the will did not comply with the requirements of section 2055(e)(2) for split-interest trusts.

The executor filed an estate tax return on July 7, 1978, in which the estate claimed the section 2055(a)(2) charitable deduction for the value of the interest passing to the two charities, i.e., the remainder interest. Plaintiffs stated that the deduction was claimed, which resulted in no estate tax being due, because reformation of the trust in accordance with section 2055(e)(3) and N.C.Gen.Stat. § 36A–53(b) was anticipated. Accordingly, on December 29, 1978, the executor filed a petition in Forsyth County Superior Court seeking a reformation of the testamentary trust to comply with section 2055(e)(2). The executor alleged that the charities and other beneficiaries consented to the reformation. The executor also requested from the IRS a Technical Advice Memorandum on the question of whether the reformation sought in the state court action qualified for the charitable deduction under section 2055. The IRS issued the Technical Advice Memorandum on August 17, 1979, wherein it stated that the proposed reformation would qualify for the deduction.

Upon audit the IRS made no assessment of federal estate tax liability based on the Technical Advice Memorandum, according to which the IRS knew the trust or will would be reformed. However, in May, 1980, the IRS assessed interest in the amount of $49,954.34 and in July, 1981, assessed interest in the amount of $9,627.48. The IRS assessed the interest because estate taxes were due at the time of the filing of the estate tax return (July 7, 1978). The taxes were due in the opinion of the IRS because no deduction was allowable at that time until the reformation. The IRS assessed interest from July 7, 1978, until 180 days after the will was reformed on July 14, 1980.

On July 14, 1980, the state court ordered the testamentary trust reformed as proposed. The reformed trust's obligation to pay an annuity amount to the surviving individual beneficiary for life and the charities totalling 5% of the trust's initial fair market value commenced at the date of the decedent's death, but payment was to be deferred from the date of death to the end of the taxable year in which the trust is completely funded.

On January 21, 1981, and September 10, 1981, respectively, the executor paid the interest assessments of $49,954.34 and $9,627.48. The IRS disallowed claims for refunds.

Section 2055(e)(3) allows post-mortem estate planning of the sort the executor accomplished in the state court action. The need for this peculiar procedure arose from the fact that many wills and trusts had been drawn in a manner which did not qualify for the deduction in cases of split-interest trusts. By the Tax Reform Act of 1969 Congress intended to protect charities by setting up rules for split-interest trusts. A charitable deduction could be taken only by complying with those rules. Congress' intent somewhat backfired because ignorance and complexity of this new law resulted in wills without qualified testamentary trusts being probated and funds that the decedents intended to go to charities being siphoned off as estate taxes. As a consequence of this dilemma Congress periodically through the 1970's provided for post-mortem reformation in section 2055(e)(3). *See* 120 Cong.Rec. H10509 (daily ed. October 11, 1974) (statement of Rep. Burke) (Plaintiffs' Brief in Support of Motion for Summary Judgment, Appendix D); Sen.Rep. No. 96–1036, 96th Cong., 2nd Sess., *reprinted in* 1980 *U.S.Code Cong. & Ad.News* 7293, 7325–27. Until December 31, 1972, the Treasury Department unilaterally permitted executors to engage in such post-mortem planning.

■ The dispute in this case concerns whether the IRS could assess interest against the estate in light of the fact that, upon reformation of the will in 1980 by state court order, the estate ultimately owed no estate taxes. The question is one of statutory interpretation, which means that the Court must divine the intent of Congress as expressed in pertinent statutes. Unfortunately, the legislative history abounds with information concerning its motivation in enacting section 2055(e)(3), *i.e.*, the frustration of the intent of testators to the dismay of charitable beneficiaries, but is silent on the question of interest on a tax liability pending reformation which will eliminate the liability. Hence, the refined issue is whether Congress intended the government to have use of the amount of tax liability, which exists by virtue of the deduction disqualifying effect of section 2055(e)(2), until that liability is erased by means of a reformation after the due date of the liability pursuant to section 2055(e)(3). The answer is affirmative.

Section 6151, I.R.C., provides that unless otherwise provided

> when a return of tax is required under this title (Title 26) or regulations (Temporary Estate Tax Regulation § 24.1(f), T.D. 7393, 1976–1 Cum.Bull. 283), the person required to make such return shall, without assessment or notice and demand from the Secretary, pay such tax to the internal revenue officer with whom the return is filed, and shall *pay* such tax *at that time* and place fixed for filing the return .... (emphasis added.)

The Ninth Circuit in an income tax case, *United States v. Northwestern Mutual Insurance Co.*, 315 F.2d 723 (1963), defined the phrase "return of tax" in section 6151(a) as referring "to a report disclosing taxpayer's income tax for a complete taxable year, not to a report notifying the [IRS] of an individual ... deduction or credit relating to taxpayer's tax for a given year." 315 F.2d at 725. By analogy the return of tax for estate tax purposes must be the return required by law to be filed. The tax is due and payable on the date the return must be filed and from that date interest begins to accumulate, although that tax "is not necessarily the tax appearing on the face of the return." *United*

*States v. Northwestern Mutual Insurance Co.*, 315 F.2d at 725. Section 6151(a) reflects the fact that the tax system in this country is primarily one of self-assessment.

For estate tax purposes, the executor must make the return required by I.R.C. § 6018(a) within nine months after the date of decedent's death, I.R.C. § 6075(a), although the Secretary may grant a six month extension for good cause. 26 C.F.R. § 20.6081–1(a). The obligation to pay estate tax arises at the date of decedent's death and that tax must be paid within nine (or fifteen) months. *Buchanan v. United States*, 377 F.Supp. 1011, 1013 (W.D.Pa. 1974), *aff'd*, 511 F.2d 1392 (3d Cir.1975). The estate tax must be paid, in accordance with section 6151(a), when the return is filed. 26 C.F.R. § 20.6151. Nothing in section 2055 alters this filing and payment schedule.

If a tax is not paid when due, *i.e.*, the date by which the return must be filed, then interest accumulates from this date to the date payment is made. Section 6601(a), I.R.C., provides that if a tax "imposed by this title ... is not paid on or before the last date prescribed for payment, interest on such amount at an annual rate established under section 6621 shall be paid for the period from such last date to the date paid." Interest accumulates without regard to any extension of time for payment. I.R.C. § 6601(b)(1). The last date prescribed for payment is the date prescribed by I.R.C. §§ 6075(a) and 6151(a).

█ Section 2055(e)(3) clearly indicates that the executor must file the return on or before the due date for filing the return in situations where the reformation has not been accomplished by that date. If the reformation is not accomplished by that date, the estate is not entitled pursuant to section 2055(e)(2) to a charitable deduction in a split-interest trust case. If the estate is not entitled to the deduction, it cannot claim the deduction. Hence, in this case, on the date the return was filed, an estate tax was due and payable "without assessments or notice or demand." I.R.C. § 6151(a). Section 2055(e)(3) also provides

that once the executor acquires the reformation, then he can file a timely claim for credit or refund because the estate would be entitled to the deduction. If the tax is not paid on the due date for filing the return, then interest begins to accumulate. I.R.C. § 6601(a). The intent of Congress that the government should have use of the tax money pending the reformation action in state court is revealed in the statutory directive that, in cases of credits or refunds, no interest is allowed against the government until 180 days after the filing of the claim for the credit or refund. Section 2055(e)(3). This final provision would make no sense if the executor was not obliged to pay the tax on the due date for filing the return.

Between the due date of the return and 180 days following the claim for a credit or refund, the tax, "computed as if no deduction were allowable under [section 2055]" (Temporary Estate Tax Regulation § 24.-1(f), T.D. 7393, 1976–1 Cum.Bull. 283), belongs to the government. Since the government is the party with the right to use the funds during that period, it has the right to interest on those funds. *See General Electric Co. v. United States*, 369 F.2d 724, 727 (Ct.Cl.1966) ("The 'fundamental principle' is: interest accrues to the person who has the right to the use of the funds"). The Supreme Court has recognized this right to receive interest belonging to the party with the right to possess the funds. In *Manning v. Seeley Tube and Box Co.*, 338 U.S. 561, 70 S.Ct. 386, 94 L.Ed. 346 (1950), an income tax case, the issue involved the taxpayer's obligation to pay interest on a prior tax year deficiency although a loss carryback in a subsequent tax year abated the deficiency. The Supreme Court held that the interest was due because "[f]rom the date the original return was to be filed until the date the deficiency was actually assessed, the taxpayer had a positive obligation to the United States: *a duty to pay its tax.*" 338 U.S. at 565, 70 S.Ct. at 389, 94 L.Ed. at 349 (emphasis added). The Supreme Court stated further as follows:

For that period the taxpayer, by its failure to pay the taxes owed, had the use of funds which rightfully should have been in the possession of the United States. The fact that the statute permits the taxpayer subsequently to avoid the payment of that debt in no way indicates that the taxpayer is to derive the benefits of the funds for the intervening period. In the absence of a clear legislative expression to the contrary, the question of who properly should possess the right of use of the money owed the Government for the period it is owed must be answered in favor of the Government. 338 U.S. at 566, 70 S.Ct. at 389, 94 L.Ed. 349–50. Although *Manning* was an income tax case, its holding is squarely applicable to estate tax, since the Supreme Court was concerned with the policy requiring prompt payment of taxes. *See Motors Insurance Corp. v. United States*, 530 F.2d 864, 872 (Ct.Cl.1976) ("*Manning* relates to the duty to pay tax punctually, and to the Government's correlative right to possess the funds so paid.")

In another income tax case, *United States v. Koppers Co.*, 348 U.S. 254, 75 S.Ct. 268, 99 L.Ed. 302 (1955), the taxpayer had understated its excess profits tax on its return, but the amount understated was abated subsequently through a type of income averaging device designed to relieve inequitably high excess profit taxes. When it filed the return, the taxpayer paid the tax shown on the return although that amount understated the actual tax due. Thus, it withheld for its own use funds due to the government. In order to avoid the interest accumulated on the underpayment, the Supreme Court stated that the taxpayer must show that the statutory scheme involved was retroactive in effect, extinguishing the deficiency as of the original due date of the tax. The Supreme Court interpreted the statutory scheme as calling for payment of the tax when due. Of special note here is the Supreme Court's focusing on the fact that under this scheme interest was not chargeable against the government on refunds of excess profits taxes in cases where an abatement results

in an overpayment. This restriction on interest, according to the high court,

> treats the Government as entitled to the use of the abated amounts between the time of their overpayment and that of their abatement. Equity demands a comparable result in the case of underpayments. Where unpaid taxes are abated ..., the taxpayer then receives a release from its existing obligation to pay the amount abated. However, the Government having been *entitled up to that time, to collect and use* the sum abated, the Government should receive interest, on the sum abated, for the period during which the Government was entitled to have its use. *This is the natural counterpart of the Government's freedom from paying interest on refunded overpayments.*

348 U.S. at 267, 75 S.Ct. at 274–275, 99 L.Ed. at 311–312 (emphasis added). Section 2055(e)(3) has a parallel provision absolving the government of any obligation to pay interest on refunds resulting from post-filing reformations. Following the reasoning in *Koppers*, the counterpart of this provision is the taxpayer's obligation to pay the tax due. The statutory scheme under section 2055 reveals a congressional intent that the government is entitled to collect and use the tax despite the allowed reformation. There is no "clear legislative expression to the contrary." *Manning v. Seeley Tube and Box Co.*, 338 U.S. at 566, 70 S.Ct. at 389, 94 L.Ed. at 349. The possibility or probability of filing an amended return seeking a credit or refund does not bypass the obligation to timely file a return initially and pay the tax due on that initial date. *United States v. Keltner*, 675 F.2d 602, 605 (4th Cir.), *cert. denied*, 459 U.S. 832, 103 S.Ct. 71, 74 L.Ed.2d 71 (1982).

■ Plaintiffs contend that the statutory regulation requirements that the executor file a return does not necessarily mean that he must also pay "the tax computed as if no deduction were allowable ...." Temporary Estate Tax Regulation § 24.1(f), T.D. 7393, 1976–1 Cum.Bull. 283. Obviously,

this contention does not arise to the level of a clear legislative expression that such tax is not in fact due. If the return is due, then section 6151, I.R.C., requires the payment of the tax actually due at that time. Here, the estate was not entitled to the deduction at that time. Conceivably the state court could have denied the proposed reformation.

Plaintiffs contend that the state court's order made the reformation effective retroactively to the date of decedent's death, thereby abolishing any tax due at the last date for timely filing the return. This ruling, of course, does not and could not preempt federal law requiring the filing of the return with the concomitant obligation, paying the tax actually owed at that time. Until the will was reformed, the government clearly had the right to use the money. The plaintiffs' dilemma here is not so much federal law requiring interest, as it is the length of time it took to obtain the state court order (approximately 19 months).

Plaintiffs contend that the deduction should have a retroactive effect because estate tax is a unitary or one time (*i.e.,* once in a lifetime) tax, in contrast to income or gift tax. Carrying this idea forward, plaintiffs state that the IRS would make two assessments—a tentative assessment at the due date for filing the estate tax return and a second assessment upon successful reformation. Plaintiffs' argument is not persuasive. Section 2055(e)(3) plainly calls for the executor to seek a credit or refund upon a successful post-filing reformation and that the government will have interest-free use of any overpayment. Moreover, retroactivity was in issue in the *Koppers* case, an income tax case, and was rejected for reasons applicable in this estate tax case.

In 1974 while addressing Congress concerning the need for the reformation scheme, *i.e.,* section 2055(e)(3), Congressman Burke commented briefly that if amended the previously unqualified trust "is treated for tax purposes as if the amended trust was actually in the will ...

as of the date of the decedent's death." 120 Cong.Rec. H10510 (daily ed. October 11, 1974). Section 2055(e)(3) plainly accomplishes that purpose if the executor obtains a reformation because the deduction is treated as having existed on the date of death. However, section 2055(e)(3) just as plainly indicates that until the deduction arises through a reformation, the government is entitled to the use of the money due without the deduction.

In an obvious effort to achieve simplicity in handling funds, the IRS did not assess or demand payment of the tax due on the date of filing the return, although it was entitled to do so. Consequently, the executor never had to file for a credit or refund. Plaintiffs make no contention of prejudice or surprise by this procedure or the intention of the IRS to collect interest. If anything, this gesture by the IRS allowed the estate to keep the tax due to invest as it saw fit, the earnings from which are now available to the executor to pay the interest assessment. Plaintiffs argue, however, that no interest accrued because, absent assessment by the IRS, the tax was never imposed. This argument is without merit because the obligation to pay the tax arose without assessment or notice and demand. I.R.C. § 6151(a).

Because the IRS never collected the tax initially due, it should not recover interest for the period of 180 days following the state court reformation order. The 180 day period is a time frame within which the IRS can receive and process credit or refund claims without incurring an interest obligation. It is not a directive to the IRS to withhold credits or refunds for 180 days. In *United States v. Koppers Co.,* 348 U.S. 254, 75 S.Ct. 268, 99 L.Ed. 302, the Supreme Court stated that the abatement of the deficiency relieved the taxpayer from the payment of interest on the deficiency *from the time of the abatement.* Here the reformation order of July 14, 1980, entitled the executor to claim a credit or refund at that time, if he had paid the tax initially due. The IRS was already aware of the details of the reformation and had ap-

proved it for purposes of the deduction. The IRS had not chosen to assess or collect the tax initially due. Under these circumstances it is only equitable that the IRS be deemed to have granted the credit or refund on the date of the state court reformation order. Therefore, the Court will direct the IRS to refund to the executor all payments of interest respecting any assessment for the 180 day period following the date of the state court reformation order, plus interest from the date the IRS received payments from the executor for the assessment.

In light of the Court's disposition of the substantive issue, it need not address either the government's motion to dismiss or plaintiffs' request for attorney's fees under the Equal Access to Justice Act.

IT IS, THEREFORE, ORDERED that plaintiffs' motion for summary judgment be, and the same hereby is, DENIED.

IT IS FURTHER ORDERED that the defendant's motion for summary judgment be, and the same hereby is, GRANTED with the exception that it shall refund interest assessed for the period following July 14, 1980, the date of the state court's reformation order, plus interest from the date the defendant received payment for such assessment at the rate prescribed by the internal revenue laws and regulations.

A Judgment will be entered accordingly.