775 F.2d 570
 56 A.F.T.R.2d 85-6588, 85-2 USTC P 13,643
 OXFORD ORPHANAGE, INC., Shriners Hospitals for Crippled
Children, and W. Eugene Johnston, III, Executor of the
Estate of Howard Schwarze Hunt and Co-Trustee of the
Testamentary Trust of Howard Schwarze Hunt, Appellants,
v.
UNITED STATES of America, Appellee.
OXFORD ORPHANAGE, INC., Shriners Hospitals for Crippled
Children, and W. Eugene Johnston, III, Executor of the
Estate of Howard Schwarze Hunt and Co-Trustee of the
Testamentary Trust of Howard Schwarze Hunt, Appellees,
v.
UNITED STATES of America, Appellant.
 Nos. 84-1650, 84-1693.
 United States Court of Appeals,
Fourth Circuit.
 Argued April 3, 1985.
Decided Oct. 21, 1985.
 
 William J. Lehrfeld, Washington, D.C., (Leonard J. Henzke, Jr., Lehrfeld & Henzke, P.C., Washington, D.C., on brief) for appellants/cross-appellees.
 Robert A. Bernstein, Washington, D.C., (Glenn L. Archer, Jr.; Asst. Atty. Gen., Michael L. Paup; Murray S. Horwitz, Washington, D.C., Kenneth W. McAllister, U.S. Atty., Greensboro, N.C., on brief) for appellee/cross-appellant.
 Before K.K. HALL and CHAPMAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 BUTZNER, Senior Circuit Judge:
 
 
 1
 W. Eugene Johnston, executor of the estate of Howard S. Hunt and cotrustee of Hunt's testamentary trust, and the charitable beneficiaries of the trust, Oxford Orphanage and Shriners Hospitals for Crippled Children, appeal from a judgment awarding the government interest on the amount of estate tax that would have been due but for amendment of Hunt's will after he died. The amendment converted his bequests of charitable remainders into qualifying gifts to charity pursuant to the Internal Revenue Code Sec. 2055(e)(3). On cross appeal the government contends that the district court erred in not allowing interest to run for 180 days after the will was amended.[1] We hold that because the amendment of the will was retroactive to the date of Hunt's death no estate tax was due and the government is not entitled to any interest.I
 
 
 2
 The Internal Revenue Code allows an estate to claim a deduction for a qualifying bequest to charity. I.R.C. Sec. 2055(a). Where a right in the property passes to a noncharitable beneficiary, with the remainder over to charity, no deduction is allowed unless the remainder is in the form of a charitable remainder unitrust, annuity trust, or pooled income fund. I.R.C. Sec. 2055(e)(2). These requirements for a dual beneficiary bequest were enacted in 1969 to assure that the charity did not receive less than the estate's charitable deduction.[2] Frequently, however, testators did not write or revise their wills to satisfy the stringent requirements of Sec. 2055(e)(2). In such instances, the deduction was disallowed and the value of the charitable bequest was diminished by the estate tax.[3]
 
 
 3
 To enable charities to receive bequests without diminution by estate taxes, Congress enacted Sec. 2055(e)(3) in 1974.[4] This section provided that even though the bequest did not qualify for a charitable deduction, the will could be amended in a state court after the testator's death to satisfy the requirements of the Code, and "a deduction shall nevertheless be allowed." If a will is amended after the date the estate tax return is due, "the deduction shall be allowed upon the filing of a timely claim for credit or refund...." Section 2055(e)(3) also provided: "In the case of a credit or refund as a result of an amendment ... no interest shall be allowed for the period prior to the expiration of the 180th day after the date on which the claim for credit or refund is filed."
 
 II
 
 4
 Howard S. Hunt died on October 6, 1977. His will directed that the residue of his estate be placed in a testamentary trust, the income from which would be paid to an individual for life. The remainder was to be divided equally between two charities, Shriners Hospitals for Crippled Children and Oxford Orphanage, Inc. The will did not comply with the technical requirements of I.R.C. Sec. 2055(e)(2) for charitable trusts.
 
 
 5
 The executor timely filed the estate tax return on July 7, 1978, and claimed a charitable deduction for the remainder. Because of the charitable deduction, the return showed that no estate tax was due, and none was paid. On December 29, 1978, the executor filed a petition for reformation in state court as provided in N.C.Gen.Stat. Sec. 36A-53(b), which specifically authorizes the court to amend a testamentary charitable trust so that it may qualify for the deduction allowed by I.R.C. Sec. 2055. While the state action was pending, the executor obtained a technical advice memorandum from the Internal Revenue Service stating that the proposed amendment to the will complied with section 2055(e)(2) and that the remainder would be deductible as charitable contributions.
 
 
 6
 On July 14, 1980, the state court, citing the technical advice memorandum, entered its decree amending the will to create an annuity trust that qualified for the federal tax deduction. The amendment was retroactive, and it became effective on the date of Hunt's death.
 
 
 7
 The Internal Revenue Service allowed the charitable deduction. It assessed no tax. Nevertheless, it charged the estate interest in the amount of approximately $60,000, calculated from the filing date of the estate tax return until 180 days after the date of the decree amending the will. The executor paid the interest and filed a claim for refund, which the IRS disallowed.
 
 
 8
 The executor and the charitable beneficiaries sued to recover the interest payment for the benefit of the charities. The district court held that the estate owed interest on the amount of tax that would have been payable from the date the estate tax was due until the date the will was amended. It denied the government's claim for interest for the period of 180 days after the will was amended.
 
 III
 
 9
 If the state court's decree amending Hunt's will had been entered before the date the estate tax return was due, the government would have no claim whatsoever for interest. But because the decree amending the will was entered after the date the tax return was due, the government argues that it is entitled to interest from the date the tax return was due until 180 days after the will was amended. It computed interest on the basis of the tax for which the estate would have been liable had the will not been amended.
 
 
 10
 The government's argument is quite straightforward. It emphasizes three sections of the Internal Revenue Code. Section 6151 provides that a tax is due and payable when the return is filed. Section 6601(a) requires the taxpayer to pay interest on any unpaid "tax imposed" by the Code. The government also relies on the following provisions of Sec. 2055(e)(3):
 
 
 11
 If the amendment or conformation of the governing instrument is made after the due date for the filing of the estate tax return (including any extension thereof), the deduction shall be allowed upon the filing of a timely claim for credit or refund (as provided for in section 6511) of an overpayment resulting from the application of this paragraph. In the case of a credit or refund as a result of an amendment or conformation made pursuant to this paragraph, no interest shall be allowed for the period prior to the expiration of the 180th day after the date on which the claim for credit or refund is filed.
 
 
 12
 The government contends that its exoneration from liability for interest is affirmative proof that Congress intended that it should be entitled to the interest.
 
 
 13
 The difficulty with the government's position is its failure to give effect to the fact that an amendment to a will made pursuant to Sec. 2055(e)(3) is retroactive to the date of the testator's death. As a consequence, the estate is entitled to a charitable deduction as of the date of death.
 
 
 14
 Retroactive application of the amendment is a central element of the statutory scheme. Distribution in accordance with the amendment must be retroactive to the date of the testator's death. This requirement assures that assets giving rise to the charitable deduction are not diverted to noncharitable beneficiaries. Any assets distributed to noncharitable beneficiaries pending the amendment must be restored to the trust.[5]
 
 
 15
 Congress recognized the importance of considering an amendment to be retroactive. Moreover, the legislative history discloses that Congress intended that the amended charitable bequest be retroactive for all purposes and not merely for the purpose of calculating the deduction. Representative Burke, a sponsor of the bill that was codified as Sec. 2055(e)(3), left no doubt about the retroactive effect of amending a will:
 
 
 16
 [The bill's] fundamental premise is that an unqualified trust, if amended or conformed ... whether effectuated through judicial proceeding or agreement among all interested parties, is treated for tax purposes as if the amended trust was actually in the will ... as of the date of the decedent's death. The amended trust is to be treated as a qualified charitable remainder trust not merely for deduction purposes but for all purposes....
 
 
 17
 120 Cong.Rec. 35,460 (1974). Nothing in the text of the statute or in the legislative history indicates that retroactivity is a hybrid, effective for a charitable deduction but ineffective with respect to the government's claim for interest.
 
 
 18
 The retroactivity of the amendment to a will renders Sec. 6601 inapplicable. That section requires the taxpayer to pay interest on any unpaid "tax imposed" by the Code. Section 2001 imposes a tax on the transfer of the testator's taxable estate. Section 2055 determines the value of the taxable estate by deducting from the gross estate the amount of all qualified charitable bequests. The charitable deduction resulting from the will's amendment pursuant to Sec. 2055(e)(3) relates back to the date of the testator's death. Consequently, the taxable estate at the date of death excludes the qualifying gift to charity. No tax is imposed on the gift and no interest is due.
 
 
 19
 We cannot accept the government's argument that the provision of Sec. 2055(e)(3) exonerating it from paying interest on overpayments entitles the government to interest when no overpayments were made. The government relies on Temporary Treasury Regulations directing that if on the due date for filing the return the will has not been amended, the tax should be computed as if no deduction were allowable. When the will is amended, a deduction will be allowed upon the filing of a claim for credit or refund. In the case of a credit or refund, the government is exonerated from paying interest until after 180 days from the date the claim is filed.[6]
 
 
 20
 Significantly, neither the statute nor the regulations explicitly provide for the assessment of interest when no overpayment is made because an executor takes the charitable deduction into account before a state court's entry of a decree amending the will. Any inference that the estate must pay interest when the executor anticipates the deduction is dispelled by the Temporary Treasury Regulation that provides:
 
 
 21
 Where a charitable remainder trust ... results from an amendment pursuant to this section, the trust will be treated as a charitable remainder trust for all purposes from [the date of the death, even though the trust is not funded until the end of a reasonable period of administration or settlement].... [T]he estate tax charitable deduction is allowable and the charitable remainder trust is exempt from Federal income taxation.[7]
 
 
 22
 The regulation is consistent with both the text of Sec. 2055(e)(3) and its legislative history. It recognizes that the amended will is retroactive to the date of death "for all purposes."
 
 
 23
 The restricted interest provision of Sec. 2055(e)(3) does precisely what Congress intended it to do--exonerate the government from paying interest on account of a charitable deduction that was not originally claimed but subsequently was made retroactive to the date of death. Without this provision, the retroactive aspect of the statutory scheme would subject the government to liability for interest. In fact, between 1969 and 1973 the government was liable for interest. The enactment of the restricted interest provision of Sec. 2055(e)(3) in 1974 was designed to relieve the government of this obligation. Thus, the statute "provides remedial legislation for charitable beneficiaries, and at the same time limits the expense the Government must undergo in effectuating these benefits." First National Bank of Oregon v. United States, 571 F.2d 21, 25 (Ct.Cl.1978).
 
 
 24
 United States v. Koppers Co., 348 U.S. 254, 75 S.Ct. 268, 99 L.Ed. 302 (1955), and Manning v. Seeley Tube & Box Co., 338 U.S. 561, 70 S.Ct. 386, 94 L.Ed. 346 (1950), on which the government relies, do not compel assessment of interest against the estate. The significance of Koppers is found in the issue that the Supreme Court deemed controlling. In the first paragraph of the opinion, 348 U.S. at 255-56, 75 S.Ct. at 268-69, the Court said:
 
 
 25
 The issue in these cases is whether, for the years 1940 through 1945, abatements of federal excess profits taxes, through application of I.R.C. Sec. 722, are retroactive. For the reasons hereafter stated, we hold that they are not and that they relieve taxpayers from the payment of interest on deficiencies in such taxes from the time of the abatements, rather than from the original due dates of the taxes abated.
 
 
 26
 Koppers explains that the test for assessment of interest is whether the abatement, or by analogy, the charitable deduction, was intended by Congress to be retroactive.
 
 
 27
 The importance of determining whether Congress intended a deduction to be retroactive is illustrated by the Court's summation of the parties' positions in Koppers:
 
 
 28
 The taxpayer contends ... [that] such deduction is necessarily retroactive ... and that the taxpayer, accordingly, is entitled to a refund of the interest on the sum awarded. The Commissioner, on the other hand, contends that the determination under Sec. 722 is not retroactive but is a current abatement effective when made.
 
 
 29
 Congress could have prescribed either treatment but did not expressly specify either.
 
 
 30
 348 U.S. at 261, 75 S.Ct. at 271.
 
 
 31
 Here, in contrast to Koppers, the legislative history and the treasury regulation establish that a will amended pursuant to Sec. 2055(e)(3) is retroactive "for all purposes." Therefore, the reasoning in Koppers explaining why the abatement was not retroactive and the consequent effect on the obligation to pay interest does not govern the tax consequences of a retroactive amendment to a will.
 
 
 32
 For similar reasons, Manning v. Seeley Tube & Box Co., 338 U.S. 561, 70 S.Ct. 386, 94 L.Ed. 346 (1950), does not govern this appeal. There the Court held that the subsequent cancellation of an assessed deficiency by a carry-back loss did not cancel the taxpayer's obligation to pay interest on the deficiency. Again the test was whether the carry-back provision was retroactive.
 
 
 33
 The statutes examined in both Koppers and Seeley contained restricted interest clauses similar to the one found in Sec. 2055(e)(3), and the Court relied in part on these clauses to determine that the abatements were not intended by Congress to be retroactive. See Koppers, 348 U.S. at 266-67, 75 S.Ct. at 274-75; Seeley, 338 U.S. at 567-68 and n. 13, 70 S.Ct. at 389-90 and n. 13. But the cases do not stand for the proposition that a similar restricted interest clause in another statute will defeat the express intention of Congress to make a deduction retroactive.
 
 
 34
 In Seeley, the Court explained: "In the absence of a clear legislative expression to the contrary, the question of who properly should possess the right of use of the money owed the Government for the period it is owed must be answered in favor of the Government." 338 U.S. at 566, 70 S.Ct. at 389; see also Koppers, 348 U.S. at 270, 75 S.Ct. at 276. With respect to the amendment of a charitable bequest pursuant to Sec. 2055(e)(3), we have the benefit of the clear legislative expression required by Seeley. The legislative history discloses, as we have mentioned, that the amended trust "is treated for tax purposes as if the amended trust was actually in the will ... as of the date of the decedent's death. The amended trust is to be treated as a qualified charitable remainder trust not merely for deduction purposes but for all purposes...."[8] Assessment of interest cannot be reconciled with the legislative intent to make the amendment relate back to the date of the testator's death for all purposes.[9]
 
 
 35
 Finally, we reject the government's argument that in return for granting permission to amend a will the statute "exacts a price from the estate by allowing the Government the use of the amount of the extinguished tax liability during a certain period of time."[10] The statute, the regulations, and the legislative history do not support this assertion. Indeed, the legislative history is to the contrary. Congress took the unusual step of allowing a will to be amended after the testator's death for the purpose of eliminating estate taxes that diminished bequests to charity.[11] Exacting a price from charities in the form of interest on the eliminated tax is inconsistent with congressional intent to benefit charities. Section 2055(e)(3) was intended to be remedial legislation, and it should be construed liberally to effect the congressional purpose.[12]
 
 
 36
 The judgment of the district court is reversed, and the case is remanded for entry of judgment in favor of the appellants.
 
 K.K. HALL, Circuit Judge, dissenting:
 
 37
 I disagree with the majority's conclusion that because the reformation of Hunt's will was retroactive to the date of his death, no interest on estate taxes was owed for the period of time between Hunt's death and the reformation. At the time that the estate tax return was filed, the decedent's will had not yet been amended and the estate tax was due. See I.R.C. Sec. 6151(a) (1954); Temporary Estate Tax Reg. Sec. 24.1(e), T.D. 7393, 1976-1 C.B. 283. Regardless of whether the estate taxes were actually paid or should have been paid but were not, the government was entitled to the use of the money from the time the estate tax return was filed until the will was reformed.
 
 
 38
 Had Hunt's estate paid the taxes due at the time the tax return was filed and had the will then later been reformed, the government would not have been required to pay the estate interest on that amount for the time period between the filing of the return and the amendment of the will. I.R.C. Sec. 2055(e)(3) (1954). It follows then that the government was entitled to the interest on the estate taxes owed from the time of filing until the will was reformed. See I.R.C. Sec. 6601(a) (1954). I would, therefore, hold that the government was due interest on the amount of tax owed at filing, for the period from July 7, 1978, until July 14, 1980, and would affirm the judgment of the district court.
 
 
 
 [1]
 The district court's opinion is reported as Oxford Orphanage, Inc. v. United States, 587 F.Supp. 1231 (M.D.N.C.1984)
 
 
 [2]
 See Oetting v. United States, 712 F.2d 358, 360-61 (8th Cir.1983)
 
 
 [3]
 See S.Rep.No. 1063, 93d Cong., 2d Sess., U.S. Code Cong. & Admin. News 1974, p. 5985, reprinted in 1974-2 C.B. 448
 
 
 [4]
 Act of Oct. 26, 1974, Pub.L. No. 93-483, Sec. 3, 88 Stat. 1457, 26 U.S.C. Sec. 2055(e)(3). Previously, Congress had enacted limited transitional provisions to bring wills in conformity with the requirements for charitable deductions. Tax Reform Act of 1969, Pub.L. No. 91-172, Sec. 664, 83 Stat. 549, 563, reprinted in 1969-3 C.B. 53. The time limitations were extended in 1974, 1976, 1978, and 1980. In 1984 Congress made reformation a permanent part of the Code. Tax Reform Act of 1984, Pub.L. No. 98-369, Sec. 1022(a), 98 Stat. 1026
 
 
 [5]
 Temporary Estate Tax Reg. Sec. 24.1(d)(2), T.D. 7393, 1976-1 C.B. 283, 285
 
 
 [6]
 Temporary Estate Tax Reg. Sec. 24.1(f), T.D. 7393, 1976-1 C.B. 283, 285
 
 
 [7]
 Temporary Estate Tax Reg. Sec. 24.1(e), T.D. 7393, 1976-1 C.B. 283, 285
 
 
 [8]
 Statement of Congressman Burke, a sponsor of the legislation. 120 Cong.Rec. 35,460 (1974)
 
 
 [9]
 The government calls our attention to Rev.Rul. 80-291, 1980-2 C.B. 373, which interprets Seeley as supporting the proposition that where a testamentary trust is reformed pursuant to I.R.C. Sec. 2055(e)(3) the government is entitled to the use of the tax initially assessed, from the due date of the estate tax return to the end of the 180-day period following the reformation of the trust. We believe the Commissioner has misread Seeley, which dealt with the effect of a nonretroactive carryback provision
 Revenue Rulings, we note, "do not have the force of law and are merely the contention of one of the parties to the litigation." Estate of Smead v. Commissioner, 78 T.C. 43, 47 n. 5 (1982). See 26 C.F.R. 601.601(d) (1985). We recognize that the Commissioner's interpretation of a code section may "achieve the force of law" when the section "has been reenacted unchanged after such interpretation was expressly called to congressional attention." Estate of Lang v. Commissioner, 64 T.C. 404, 407 n. 4 (1975), citing United States v. Correll, 389 U.S. 299, 88 S.Ct. 445, 19 L.Ed.2d 537 (1967); see also Bob Jones University v. United States, 461 U.S. 574, 596-602, 103 S.Ct. 2017, 2031-34, 76 L.Ed.2d 157 (1983). Nonetheless, "courts exercise review over IRS actions." Bob Jones, 461 U.S. at 596, 103 S.Ct. at 2031. In the instant case the government has offered no evidence to support the inference that the Congress has silently endorsed the Commissioner's reading of section 2055(e).
 
 
 [10]
 Brief for the United States at 22
 
 
 [11]
 See, e.g., S.Rep. No. 938, 94th Cong., 2d Sess. 600, U.S. Code Cong. & Admin. News 1976, p. 2897, reprinted in 1976-3 C.B. 638
 
 
 [12]
 In Estate of Crafts v. Commissioner, 74 T.C. 1439, 1455 (1980), the court said:
 [I]t is evident that section 2055(e)(3) was enacted as a relief provision in order to alleviate the difficulties caused by the complex requirements of the Tax Reform Act of 1969 relating to split-interest bequests. See S.Rept. 93-1063, 93d Cong., 2d Sess. (1974), 1974-2 C.B. 449. As a relief provision which inures to the benefit of charity, we believe that it should be construed liberally so that the intended charitable purposes are furthered, assuming (which we believe to be the case) that this can be accomplished without in any way subverting congressional intent.