SHRINERS HOSPITALS FOR CRIP-PLED CHILDREN, As Transferee and Successor in Interest to the Estate of Ernest C. Hudson, Deceased, Plaintiff,

v.

The UNITED STATES, Defendant.

No. 379–85T.

United States Claims Court.

Dec. 17, 1987.

William J. Lehrfeld, Washington, D.C., attorney of record, for plaintiff. Leonard J. Henzke, Jr. and Lehrfeld & Henzke, P.C., Washington, D.C., of counsel.

George L. Hastings, Jr., Washington, D.C., with whom was Asst. Atty. Gen., William S. Rose, Jr., for defendant. Mildred L. Seidman and Ellen K. McGee, Washington, D.C., of counsel.

## OPINION

WIESE, Judge.

Plaintiff is the successor in interest to a decedent's estate. In that capacity, it is entitled to a refund of taxes assessed against the estate in 1980. The refund is the result of a retroactive revision in the estate tax provisions dealing with deductions for charitable remainder trusts. While making this revision retroactive, Congress also provided that the Government would not be liable for interest on those resulting refund claims that would otherwise have been barred by the statute of limitations. The issue presented in this suit is whether this restriction on interest goes so far as to preclude recovery of that part of the initial estate tax assessment that represented interest charged for late payment.

The case is before the court on cross-motions for summary judgment. Having reviewed the briefs of the parties and heard oral argument, the court now grants defendant's motion.

## BACKGROUND

Plaintiff, Shriners Hospitals for Crippled Children, is a nonprofit charitable hospital exempt from federal income tax and eligible to receive tax deductible contributions. By order of a state court, it is now the successor in interest to the tax refund claim of the estate of Ernest C. Hudson. Mr. Hudson died on February 18, 1979. In his will, Mr. Hudson left half of his estate, amounting to $169,569.88, in trust for the

benefit of Mrs. Ben Downey during her life, with the remainder to be paid to plaintiff upon her death. Mrs. Downey died on August 23, 1979, after having received $4,675 in income from the trust. The balance of the trust fund was then paid to plaintiff. Four months later, the federal tax return for the estate was filed.

In its return, the estate deducted the entire trust fund as a charitable gift without any offset in value for the intervening life estate. Upon audit in September 1980, the Internal Revenue Service ("IRS") disallowed the deduction on grounds that the bequest did not meet the requirements of a tax-deductible charitable remainder trust under I.R.C. § 2055(e)(2) (1954).

The IRS assessed a deficiency of $52,358.46. It also collected $5,678.75 in interest, representing the time-value of the money from the date the return was filed to the date the deficiency was assessed. Payment of the deficiency amount and the interest thereon was made on November 19, 1980, roughly a year after the due date of the return. At that time, the estate did not contest the IRS decision, that is, it did not file a claim for refund within the limitations period then in effect.

The matter remained closed until July 18, 1984 when Congress passed the Deficit Reduction Act of 1984 ("DEFRA"), Pub.L. No. 98–369, 98 Stat. 494. Section 1022(a)(3)(F) of DEFRA, 98 Stat. 1026, amended the estate tax provisions to permit a deduction in situations where the will creates a charitable remainder trust that does not meet the technical requirements for deductibility under § 2055(e)(2), but the life beneficiary dies shortly after the testator so that the charitable remainderman takes the trust corpus before the estate tax return is due. The relevant provision, I.R.C. § 2055(e)(3)(F), provides in pertinent part:

*Special Rule Where Income Beneficiary Dies.*—If (by reason of the death of any individual, or by termination or distribution of a trust in accordance with the terms of the trust instrument) by the due date for filing the estate tax return (including any extension thereof) a reformable interest is in a wholly charitable trust or passes directly to a person or for a use described in subsection (a) [§ 2055(a) —defining deductible charitable bequests], a deduction shall be allowed for such reformable interest as if it had met the requirements of paragraph (2) [§ 2055(a)(2)—defining eligible non-profit corporations] on the date of the decedent's death.

Under the statute, if the designated income beneficiary dies before the estate tax is due, the will is automatically reformed so as to create a tax-deductible gift going directly to the charity. Staff of Senate Comm. on Finance, 98th Cong., 2d Sess., Deficit Reduction Act of 1984, Explanation of Provisions Approved by the Committee on March 21, 1984 at 734 (Comm.Print 1984). The parties agree that the Hudson will was so reformed by the death of Mrs. Downey.

In a further effort to benefit charities, § 1022(e)(3)(A) of DEFRA made the code revision retroactive by giving claimants one year from the effective date of DEFRA to seek estate tax refunds that would otherwise have been barred by the statute of limitations. However, § 1022(e)(3)(B) placed the following restriction on the Government's liability for interest on the refunds in this special class:[1]

*No Interest Where Statute [of limitations] Closed On Date Of Enactment.*— In any case where the making of the credit or refund of the overpayment described in subparagraph (A) is barred on the date of the enactment of this Act [July 18, 1984], no interest shall be allowed with respect to such overpayment (or any related adjustment) for the period before the date 180 days after the date on which the Secretary of the Treasury (or his delegate) is notified that the reformation has occurred.

---

1. The section of the statute, § 1022(e)(3)(A), (B), 98 Stat. 1029, was not codified but appears as a "note" to I.R.C. § 2055.

The issue in this case is the meaning of this last section. Specifically, the question is whether the interest prohibition set forth in the section bars a refund of the interest plaintiff paid on the prior deficiency (the underpayment).

## DISCUSSION

### A.

Plaintiff's position is that it is entitled to recover the interest charged for the late payment. The argument for this result comes largely from the words of the previously-quoted statute, section 2055(e)(3)(F): "a deduction shall be allowed for such reformable interest as if it had met the requirements [for deductibility] on the date of the decedent's death." These words, says plaintiff, admit of no uncertainty—they direct the retroactive allowance of a deduction where the remainder interest in a charitable trust has vested in possession by the due date for filing of the estate tax return. And since the deduction is retroactively effective as of the date of decedent's death—the argument continues—there would be no estate tax underpayment and, hence, no related interest obligation.

To buttress this position, plaintiff points to the remarks of one of the principal sponsors of the 1984 amendments, Representative Sam Gibbons, who stated that section 2055(e)(3)'s "fundamental purpose" is that reformation is effective "for all purposes," "as if the amended transfer was actually in the decedent's will—or other governing instrument—as of the original transfer date." 130 Cong.Rec. pp. H7108–7109 (daily ed. June 27, 1984).

From this view of section 2055(e)(3) follows then the meaning that plaintiff ascribes to the interest restrictions set forth in section 1022(e)(3)(B), namely, that the section proscribes interest *on* the overpayment as opposed to interest subsumed *in* the overpayment. In other words, the section does not diminish the amount of the refund itself because interest is disallowed only "with respect to such overpayment," *i.e.*, the amount retroactively determined to have been "overpaid."

The Government urges a different reading of the statutory sections in question. In defendant's view, the sense of the statute is to be gleaned not simply from the words alone, but from the factual situations to which they apply. Thus, defendant's argument begins (as did plaintiff's) with the proposition that, in permitting these special refund claims, Congress' aim was to put an estate in the same position it would have been in had the deduction of the trust gift been lawful at the time the estate tax return was filed. But, says defendant, this aim stops short of the full retroactivity notion that plaintiff's position espouses.

In support of this view, it is pointed out that under the very terms of the interest section in question, an estate which had timely paid the full amount of the taxes due at the date the return was filed is denied any credit whatsoever for the time-value of its retroactively-allowed deduction (that is, if the IRS acts upon the refund application within the specified 180–day period). Given this interest restriction on a refund of taxes that were timely paid, it makes no sense—so the argument continues—to refund interest initially collected for taxes that were not timely paid. The Government's exoneration from interest liability in the first situation necessarily establishes the right to retain interest in the second for the two are economic equivalents. To say it another way, the statute's restriction on the payment of interest plainly evidences Congress' intention that the time-value of the refunded tax dollar be retained by the Treasury.

The court agrees with the Government. In construing the language of statutes, "the assumption [is] that the ordinary meaning of that language accurately expresses the legislative purpose." *Park 'N Fly v. Dollar Park & Fly, Inc.*, 469 U.S. 189, 194, 105 S.Ct. 658, 662, 83 L.Ed.2d 582 (1985). But this does not mean that the language of § 1022(e)(3)(B) must be read in a hyper-technical manner that conflicts with common sense. In interpreting tax statutes in particular, courts have some "scope for adopting a restricted rather than a literal or usual meaning of its words

**54**

where acceptance of that meaning would lead to absurd results * * * or would thwart the obvious purpose of the statute." *Commissioner v. Brown,* 380 U.S. 563, 571, 85 S.Ct. 1162, 1166, 14 L.Ed.2d 75 (1965) (quoting *Helvering v. Hammel,* 311 U.S. 504, 510–11, 61 S.Ct. 368, 371, 85 L.Ed. 303 (1941)).

The ultra-literal construction of § 1022(e)(3)(B) advanced by plaintiff would produce just such an absurd result. In exonerating the Government from the obligation to pay interest "with respect to such overpayment," Congress indicated no desire to distinguish between an estate which timely paid the full taxes legally due and one that claimed an erroneous deduction and waited for the IRS to "catch up with it" on audit. *See* DEFRA, Explanation of Provisions at 735 (Comm.Print 1984). To permit the latter taxpayer to recover any portion of the time-value of money completely denied to its more punctual counterpart would, in effect, reward the late payment of taxes. The court cannot ascribe to the statute such an unbalanced result in the absence of clear evidence that such was Congress' aim.

The most sensible reading of the statutory scheme at issue here is simply this: Congress intended to benefit charities by permitting estates to take a retroactive deduction for certain split-interest trusts, but it also meant to protect the public treasury by limiting recovery to the principal amount of the deduction, with no interest. This is the result Congress meant to achieve when it provided in § 1022(e)(3)(B) that "no interest shall be allowed with respect to such overpayment." We therefore conclude that with respect to refunds for retroactive deductions of charitable remainder trusts, § 1022(e)(3)(B) of DEFRA prohibits the recovery of any amount representing the time-value of the deduction, *i.e.,* the interest.

### B.

An additional argument must be considered. Plaintiff contends that substantially the same issue that is raised in this case was also litigated before the Fourth Circuit in *Oxford Orphanage, Inc. v. United States,* 775 F.2d 570 (4th Cir.1985), and was there decided against the Government. Since Shriners Hospitals (the plaintiff here) appeared as a named party in that suit along with the Oxford Orphanage (both organizations having been named as charitable beneficiaries of the estate there in question) and had, in addition, borne the economic burden of that litigation, plaintiff argues that the Government is foreclosed—collaterally estopped—from pursuing a second ruling on the same issue in this court.

Collateral estoppel, or "issue preclusion" as it is now more commonly called, is a rule of judicial administration which provides that an issue of fact or law that was litigated and decided by a valid and final judgment is conclusive in a later suit between the parties whether involving the same or a different claim. *Restatement* (Second) *of Judgments,* § 27 (1982). The rule is founded on the view that courts should not have to repeatedly deal with the same issue once a full and fair opportunity to resolve that issue has been afforded a litigant. *United States v. Mendoza,* 464 U.S. 154, 159, 104 S.Ct. 568, 571, 78 L.Ed.2d 379 (1984). But in applying collateral estoppel to tax cases, the Supreme Court has cautioned that "[i]t must be confined to situations where the matter raised in the second suit is identical in all respects with that decided in the first proceeding and where the controlling facts and applicable legal rules remain unchanged." *Commissioner v. Sunnen,* 333 U.S. 591, 599–600, 68 S.Ct. 715, 720, 92 L.Ed. 898 (1948). Consequently, "if the legal matters determined in the earlier case differ from those raised in the second case, collateral estoppel has no bearing on the situation." *Id.* at 600, 68 S.Ct. at 720. Such is the situation before us.

In broad outline, the case referred to, *Oxford Orphanage,* parallels the present litigation. There, an executor had timely filed an estate tax return claiming a deduction for charitable bequests (to Oxford Orphanage and Shriners Hospitals) based upon an anticipated postmortem reformation of the will that would qualify the testamentary trust for deduction under the ap-

plicable section of the tax code. The deduction taken was not, however, warranted on the basis of the facts as they stood at the time the return was filed.

Thus, as here, the basic question in the case was whether, notwithstanding the estate's subsequent entitlement to a retroactive refund, the Government had a right to the interest that would otherwise have been due on the tax underpayment that prevailed from the return's initial filing date to the date of reformation—roughly a two-year span. Where the cases differ, however, is that, in *Oxford Orphanage*, the issue arose under the predecessor version to section 2055 rather than the statutory section presently in issue. And therein lies the impediment to the application of collateral estoppel: the statutes are not the same. Therefore, the issues cannot be the same.

True, both statutes, the one involved in *Oxford Orphanage* and that in issue here, address the same general subject in roughly the same language, namely, a prohibition of interest on refund claims deriving from retroactively-extinguished estate tax liabilities. But the statutes focus on different time periods. The predecessor statute barred interest on timely-filed refund claims; by contrast, the interest prohibition here is directed only to those claims for refund which the statute rescued from the bar of the statute of limitations, *i.e.*, claims that would otherwise have been time barred. Given these distinctly separate concerns as expressed in the words of the statutes, it is a self-evident elaboration to add that they reflect different legislative interests.

Therefore, as a matter of *res judicata*, the construction of these statutes must be seen as involving different legal issues for that term denotes a "single, certain and material point arising out of the allegations and contentions of the parties." 1B J. Moore, J. Lucas, & T. Currier, Moore's Federal Practice ¶ 0.443[2] (2d ed. 1984)

(quoting *Paine & Williams v. Baldwin Rubber Co.,* 113 F.2d 840, 843 (6th Cir. 1940)). And the points here obviously are not the same for what stands as part of the meaning and background of the predecessor statute could not be offered in support of the meaning of the present statute.[2] In a word then, the issues are not the same because their proofs are not.

Lest there be any doubt about this conclusion, we refer to *Phipps v. United States,* 206 Ct.Cl. 583, 586, 515 F.2d 1099, 1100 (1975), where the court addressed a roughly analogous question, saying "[u]nder *Commissioner v. Sunnen,* collateral estoppel does not carry the interpretation of one written agreement over to another, even when the terms are much the same." The rule could hardly be otherwise where the interpretation of different statutes is involved. From the foregoing analysis, it follows that collateral estoppel is not appropriate here.

### CONCLUSION

In accordance with the views expressed in this opinion, plaintiff's motion for summary judgment is denied and defendant's cross-motion for summary judgment is granted. The complaint shall be dismissed without costs.

2. It is clear from the statements of Rep. Sam Gibbons, one of the principal sponsors of the 1984 amendments in dispute here, that the new provision should stand alone in terms of meaning and similarly in terms of legal implications:

"[N]o inference should be drawn from the enactment of this legislation that any particular revenue ruling, or private ruling, or judicial decision, is either approved or disapproved by our efforts." 130 Cong.Rec. H7108 (1984).